FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2009 MAR 24  AM 10: 33

CLERK _L. Flebyders_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

AUGUSTA VIDEO, INC.,          *
                              *
        Plaintiff,            *
                              *    CIVIL ACTION NO.
    vs.                       *    CV 102-094
                              *
AUGUSTA-RICHMOND COUNTY,      *
GEORGIA; AUGUSTA-RICHMOND     *
COUNTY COMMISSION,            *
                              *
        Defendants.           *

# O R D E R

Before the Court in the captioned matter is Defendants'
motion for partial summary judgment filed on November 14,
2008.[1]   In response to this motion, Plaintiff filed a
responsive brief, a "Motion to Refuse Application for Summary
Judgment," a motion for a scheduling order and trial, and a
motion for leave to engage in discovery, all of which will be

---

[1]    Defendants initially filed a motion for summary
judgment (or in the alternative, for partial summary judgment)
on February 21, 2008, consideration of which was deferred by
Order of July 24, 2008.  (Doc. No. 164.)  In their more recent
motion for partial summary judgment, Defendants reassert the
grounds contained within their February motion that had not
become moot.  In other words, both motions for partial summary
judgment are based upon the same grounds.  Accordingly, the
Clerk is directed to **TERMINATE** the first motion for summary
judgment filed on February 21, 2008.   The Court will now
consider the motion for partial summary judgment filed in
November 2008.

DHB (34)                                      CCC: _____

discussed in more detail below. Upon consideration of the parties' briefs and the relevant law, Defendants' motion for partial summary judgment is **GRANTED** for the reasons stated herein.

## I. BACKGROUND

At the outset, the Court assumes the reader has an advanced level of familiarity with the background facts and procedural history of this case. Nevertheless, and for the sake of convenience, the Court will reiterate the relevant procedural facts, at times verbatim from prior orders.

## A. Background Prior to the Eleventh Circuit Mandate of September 6, 2007

This case, filed under 42 U.S.C. § 1983, involves Plaintiff's challenge to the zoning and licensing scheme for adult entertainment businesses in Augusta, Georgia. In April of 2002, when Plaintiff filed its first application to operate an adult entertainment business in Augusta, Georgia, the business was subject to two separate ordinances: the Zoning Ordinance of the Augusta-Richmond County Land Development Code[2] and the Adult Entertainment Ordinance.[3] To have opened

---

[2] The "Zoning Ordinance" refers to Sections 22 through 24 of the Land Development Code. The Land Development Code is incorporated by reference into the Augusta-Richmond County

2

for business at that time, Plaintiff must have received approval by the Augusta-Richmond County Commission (the "County Commission") in the form of a "special exception" to the commercial zone in which it was located, which in Plaintiff's case was the B-2 general business zone. See Augusta-Richmond County Land Development Code, § 22-2(b). Plaintiff must also have obtained from the County Commission a licensing permit and a Business Tax Certificate, under § 6-1-5(a) and (b) respectively of the Adult Entertainment Ordinance.

On June 18, 2002, the County Commission denied Plaintiff's application for a special exception to zoning despite the fact that the Augusta Planning Commission approved its application. Plaintiff did not seek or acquire a licensing permit under the Adult Entertainment Ordinance at that time; however, Plaintiff did obtain the necessary Business Tax Certificate.

Plaintiff filed the instant lawsuit on June 24, 2002, seeking declaratory and injunctive relief. Plaintiff challenged the original zoning and licensing ordinances, claiming that they were unconstitutional prior restraints on

---

Code. See § 8-5-1, Augusta-Richmond County Code.

[3] The "Adult Entertainment Ordinance" refers to Title 6 of the Augusta-Richmond County Code.

AO 72A
(Rev. 8/82)

speech in violation of the First Amendment. (Compl. ¶¶ 58, 69-72.) Plaintiff claimed that the County Commission's denial of its application for a special exception was unlawful and violated its First Amendment and due process rights. (Id. ¶ 101.) Specifically, Plaintiff complained, inter alia, of the unfettered discretion given to the County Commission to grant or deny a special exception application (id. ¶¶ 59-60, 75) and of the failure to require a decision from the permitting authority within a specified brief period of time (id. ¶¶ 61-62, 73). Plaintiff also complained that the ordinances failed to provide a sufficient number of sites for adult entertainment businesses to operate in Richmond County. (Id. ¶ 64

On July 18, 2002, the County Commission, probably sensing that Plaintiff's constitutional challenge to the original zoning and licensing schemes had merit, struck the Adult Entertainment Ordinance in its entirety and adopted a new version.[4] The newly adopted Adult Entertainment Ordinance

---

[4] The County Commission amended the Adult Entertainment Ordinance again on August 6, 2002. On September 17, 2002, the County Commission amended the Zoning Ordinance by deleting § 22-2(b) of the Zoning Ordinance and adding a new section, § 28-C, entitled "Adult Entertainment," which incorporated the zoning provisions of the newly adopted Adult Entertainment Ordinance. The location requirements of the newly adopted Adult Entertainment Ordinance and the amended Zoning Ordinance are nearly identical. These amendments to the Adult Entertainment Ordinance and the Zoning Ordinance have been referred to as "the Summer 2002 Amendments" throughout this litigation.

4

retained the requirement that Plaintiff obtain both a Business Tax Certificate and a licensing permit to operate an adult business, but eliminated the requirement of obtaining a special exception under the Zoning Ordinance. The amended Adult Entertainment Ordinance included new setback requirements and regulated certain aspects of adult entertainment businesses, including hours of operation, the age of employees and customers, and the conduct of employees. It also restricted the zones in which an adult business may operate to "Light Industrial" and "Heavy Industrial," eliminating the "General Business" zone that previously had been permitted. Finally, the amended Adult Entertainment Ordinance added a prohibition against the location of an adult entertainment business within "an area designated as an Augusta gateway/corridor." Plaintiff's establishment lies within a designated "gateway corridor."

On July 19, 2002, the day after the County Commission adopted the amended Adult Entertainment Ordinance, Plaintiff opened its doors for business. Plaintiff has alleged that its manager was arrested that day for operating without an adult entertainment license. Plaintiff then closed the business because of the threat of more arrests. (Third Am. Compl. ¶¶ 61-64.)

On July 26, 2002, this Court preliminarily enjoined

5

Defendants from enforcing the original Adult Entertainment Ordinance and the relevant portions of the original Zoning Ordinance because they violated the First Amendment. The Court did not consider the constitutionality of the Summer 2002 Amendments at that time. Plaintiff subsequently moved for additional injunctive relief based upon the Summer 2002 Amendments. Specifically, Plaintiff challenged the Commission's amendment of the Adult Entertainment Ordinance for failure to comply with the notice requirement of the Zoning Procedures Law of Georgia. Defendants argued that they were not required to comply with the notice requirement because the Adult Entertainment Ordinance was not a zoning measure. Rejecting Defendants' contention, this Court preliminarily enjoined Defendants from enforcing the amended Adult Entertainment Ordinance on January 2, 2003. The Court did not address any of Plaintiff's constitutional challenges. On the strength of this second injunction, Plaintiff opened for business at that time.

The Eleventh Circuit reversed this Court's issuance of the second preliminary injunction based upon intervening precedent. See Augusta Video, Inc. v. Augusta-Richmond County, No. 03-10574, 87 Fed. Appx. 712 (Table) (11th Cir. Oct. 30, 2003) (citing Artistic Entm't, Inc. v. City of Warner Robins, 331 F.3d 1196 (11th Cir. 2003)). In short, the

6

Eleventh Circuit held that the Adult Entertainment Ordinance is not a zoning ordinance subject to the Zoning Procedures Act, but rather it is a licensing ordinance regulating adult businesses.

In light of the reversal, the County Commission held a hearing on December 16, 2003, and determined that Plaintiff's Business Tax Certificate should be revoked based upon Plaintiff's failure to obtain a licensing permit as required by the Adult Entertainment Ordinance. (See Tr. of County Comm'n Mtg. of Dec. 16, 2003, doc. no. 66.) Plaintiff was forced to close its business the next day, and it has remained closed since that time.

On December 23, 2003, Plaintiff filed an amended complaint, challenging the constitutionality of the original zoning and licensing scheme as well as the Summer 2002 Amendments. (Second Am. Compl., doc. no. 55.) Plaintiff specifically challenged the new location restrictions of the Summer 2002 Amendments because the restrictions left an insufficient number of sites to operate an adult entertainment business. (Id. ¶¶ 84-91.)

At that time, Plaintiff was unaware that the County Commission had enacted another Adult Entertainment Ordinance and amended § 28-C-3 of the Zoning Ordinance in April of 2003. These amendments will collectively be referred to as "the

7

current Ordinance" herein. Plaintiff targeted the current Ordinance with its Third Amended Complaint, filed on March 16, 2004, and an amended third motion for preliminary injunction. In the Third Amended Complaint, Plaintiff alleges that it had met all setback requirements of the original zoning ordinances and should have been issued a special zoning exception. (Third Am. Compl., doc. no. 72, ¶ 27.) Plaintiff states that it did not receive the special exception or an adult entertainment license because the original ordinances were unconstitutional on their face. (Id. ¶ 29.) Plaintiff also realleged its constitutional challenges to the Summer 2002 Amendments. (Id. ¶ 73.) Plaintiff also claimed that the Summer 2002 Amendments could not be enforced against it because it is a lawful nonconforming use. (Id. ¶ 74.) Finally, Plaintiff asserted several constitutional challenges against the current ordinances, including a claim that the new location restrictions such as the gateway corridor prohibition, which also appears in the current Adult Entertainment Ordinance, left an insufficient number of sites to operate an adult entertainment business. (Id. ¶¶ 98-103.)

By Order of March 1, 2005, I rejected Plaintiff's claimed "grandfather" status. That decision was reaffirmed in the Summary Judgment Order of November 9, 2006. Specifically, I found that Plaintiff did not have a lawful nonconforming

8

business at the time it applied for the special exception under the unconstitutional Zoning Ordinance because Plaintiff had not acquired a licensing permit under the Adult Entertainment Ordinance. Further, despite the fact that the amended Adult Entertainment Ordinance had been placed back in good stead after the Eleventh Circuit reversed this Court's grant of the second preliminary injunction, and despite the fact that the requirement for a special exception had been removed from the Zoning Ordinance, Plaintiff did not apply for the necessary licensing permit under the amended Adult Entertainment Ordinance. Having determined that Plaintiff's application for business was never complete, I found that it did not perfect its right to become vested upon application and did not operate a lawful business. Thus, it was not entitled to grandfather status. (Order of Mar. 1, 2005, at 9-12.)

In the Summary Judgment Order, I also concluded that the current Adult Entertainment Ordinance passed intermediate scrutiny by serving a substantial governmental interest and allowing for alternative avenues of communication. (Id. at 13-27.)

9

**B. The Eleventh Circuit Mandate**

On September 6, 2007, the Eleventh Circuit Court of Appeals reversed the grant of summary judgment to Defendants upon concluding that this Court erred in denying grandfather status to Plaintiff. See Augusta Video, Inc. v. Augusta-Richmond County, 249 Fed. Appx. 93, 2007 WL 2510151 (11th Cir. Sept. 6, 2007). Specifically, the Court of Appeals found that the Zoning Ordinance's special exception requirement was unconstitutional. Id. at 97-98, *3. The court further held that Plaintiff's use as an adult entertainment business "is grandfathered into the B-2 zone." Id. at 99, *4.

The Eleventh Circuit next stated, in no uncertain terms, that

> this does not mean that [Plaintiff] may immediately open its doors; it means only that it is properly zoned to operate an adult business in the B-2 zone. [Plaintiff] must still comply with the remaining valid requirements of the Augusta's original Zoning Ordinance, including the setback requirements. It must also obtain a Business Tax Certificate and an adult entertainment establishment permit under the current Adult Entertainment Ordinance.

Id. (emphasis added).

The Eleventh Circuit then held that it need not decide whether the current Zoning Ordinance provides reasonable alternative avenues of communication by limiting the sites available to the LI and HI zones because Plaintiff could rely upon its grandfather status. The court stated: "Augusta Video

10

is exempt from the requirement in the Current Adult Entertainment Ordinance that requires applicants to prove that they are located in the LI or HI zones. **However, the remaining requirements remain in full effect.**" Id. at 99-100, *5 (emphasis added). Finally, the Court held that Plaintiff's other constitutional challenges to the current Adult Entertainment Ordinance were without merit. Id.

### C. Background Subsequent to the Eleventh Circuit Mandate of September 6, 2007

On October 25, 2007, this Court conducted a telephonic status conference and requested that the parties submit specific recommendations as to how the case should proceed in light of the Eleventh Circuit mandate. It is through their submissions that it became apparent that the parties read the mandate quite differently. Plaintiff believed that it had prevailed on a material issue in the litigation and that the case should proceed to the resolution of damages issues. In its submission, Plaintiff only requested discovery on financial matters. (See Doc. No. 134.) Contrarily, Defendants contended that Plaintiff had yet to establish liability because it still had to show compliance with the setback requirements of the original Zoning Ordinance and the requirements of the current Adult Entertainment Ordinance.

By Order of December 27, 2007, this Court agreed with

11

Defendants that Plaintiff had not prevailed on any constitutional or state law claim in the case. The Court entered a Scheduling Order in which the following issue was identified:

> [I]n order to be entitled to damages such as lost profits, Plaintiff must show that it should have been open from the time of its application to the County Commission and thereafter. . . . [T]he issue becomes what were the legal requirements placed upon Plaintiff at the time by the applicable zoning and licensing scheme and whether Plaintiff met said requirements. For instance, the Court must now concern itself with whether the Summer 2002 Amendments, including the Gateway Corridor prohibition, are applicable to Plaintiff.

(Order of Dec. 27, 2007, at 10-11.) The Scheduling Order allowed the parties to amend their pleadings by January 21, 2008, and to file requests for additional discovery by January 31, 2008. The Court also set February 21, 2008, as the last day to file motions.

Plaintiff did not seek to amend its pleadings. On January 30, 2008, Plaintiff filed a motion for discovery to address the following two issues:

(1) whether Plaintiff had complied with all setback requirements at the time it applied for the special zoning exception and at the time of the Summer 2002 Amendments; and

(2) whether Defendants are entitled to a claimed setoff defense.[5]

---

[5] The Court denied Defendants' motion to allow them to amend their answer to include the affirmative defense of setoff. (See Order of March 13, 2008.) Accordingly, discovery on this issue was not needed.

12

While this motion for discovery was pending, Defendants filed the February motion for summary judgment, in which they argued, in part, that Plaintiff did not comply with the setback requirements of the original Zoning Ordinance because its business was located too close to a regular school bus stop. Defendants also necessarily filed a motion to withdraw an admission regarding compliance with the setback requirements.[6] In response to the motion for summary judgment, Plaintiff again sought an opportunity to discover information pertaining to its compliance with the setback requirements.[7]

On June 30, 2008, the Court entered an Order scheduling a hearing on the setback issue. On July 24, 2008, the Court allowed the admission to be withdrawn and reopened discovery for the limited purpose of exploring Plaintiff's compliance (or noncompliance) with the setback requirements. (See Discovery Order of July 24, 2008, Doc. No. 164.) Plaintiff immediately filed a "Petition for Writ of Mandamus" in the Eleventh Circuit Court of Appeals, in which it argued that this Court had not followed the mandate of September 6, 2007,

---

[6] In the admission, Defendants admit that Plaintiff's business location met the setback requirements of the original Zoning Ordinance. (See Doc. No. 144, Ex. A, at 6.)

[7] Plaintiff continued to maintain, however, that the Eleventh Circuit's mandate resolved the issue of setback compliance in its favor.

13

or in the alternative, had abused its discretion in granting Defendants' motion to withdraw. During the re-opened discovery period, Plaintiff served a request for production of documents for all Business Tax Certificates and licensing permits issued to other adult entertainment establishments operating in Richmond County. Plaintiff also requested all communications concerning zoning and setback issues as they relate to other adult entertainment establishments operating in Richmond County. (See Doc. No. 176, Ex. A, ¶¶ 16-17.) Defendants objected to both of these requests as unrelated to the issues before the Court. Plaintiff did not pursue these documents any further with defense counsel or the Court.

On October 8, 2008, the depositions of Defendants' representative, George A. Patty, and their agent, Robert H. Sherman, were convened pursuant to notice. When Plaintiff asked these witnesses for information about the treatment of other adult entertainment businesses with respect to zoning and licensing requirements, defense counsel instructed the witnesses not to answer. Plaintiff thus filed a motion to compel discovery, in which it argued that the questions posed to the witnesses were designed to elicit information "support[ing] possible arguments by Plaintiff based on administrative construction of the zoning code, waiver, estoppel, and violation of Equal Protection." (Doc. No. 173,

14

at 3.)

On October 22, 2008, the Eleventh Circuit granted Plaintiff's petition for writ of mandamus on the basis that this Court had abused its discretion in allowing Defendants to withdraw the admission. (Doc. No. 175.) In this Order, the Eleventh Circuit stated: "**[W]e find that the district court is in compliance with the [September 6, 2007] mandate . . . .**"[8] (Id. (emphasis added).)

On November 14, 2008, Defendants filed the subject motion for partial summary judgment. In response, Plaintiff filed a "Motion to Refuse Application for Summary Judgment" in which it again stresses the need to have the requested discovery respecting Defendants' treatment of other adult entertainment businesses.[9]

Following a hearing on the motion to compel, the United States Magistrate Judge entered an Order wherein he concluded that Plaintiff's pursuit of discovery pertaining to other adult entertainment businesses was outside the scope of this Court's limited Discovery Order of July 24, 2008. (Doc. No.

---

[8] On January 7, 2009, the Eleventh Circuit denied Defendants' motion for reconsideration of its October 22, 2008 order.

[9] Plaintiff also filed a "Motion for Scheduling Order and Trial" in which it maintains that the liability issue has been resolved in its favor by the Eleventh Circuit and the Court should proceed to the damages phase.

15

197.) Accordingly, the Magistrate Judge denied Plaintiff's motion, noting that Plaintiff should have filed an appropriate motion requesting the expansion of discovery. (Id. at 8 n.6.)

Presently, and in light of the Magistrate Judge's suggestion, Plaintiff has filed a motion for leave to engage in discovery, seeking to re-open discovery for the purpose of obtaining information about Defendants' treatment of other adult entertainment businesses. The Clerk of Court referred the motion to the Magistrate Judge because it is a discovery motion; this Court, however, will address Plaintiff's request for discovery because the issues are identical to those presented in Plaintiff's response to the motion for partial summary judgment and its motion to refuse application for summary judgment.

## II. LEGAL ANALYSIS

### A. Plaintiff's Discovery Request

Plaintiff seeks discovery of information it believes is relevant to Defendants' pending motion for partial summary judgment. Consequently, this Court must begin its analysis with an overview of Defendants' grounds for summary judgment.

I begin with the mandate of the Eleventh Circuit that specifically states that Plaintiff "must still comply with the

16

remaining valid requirements of the Augusta's <u>original</u> Zoning
Ordinance, including the setback requirements. It must also
obtain a Business Tax Certificate and an adult entertainment
establishment permit under the <u>current</u> Adult Entertainment
Ordinance." With this mandate in mind, I later explained that
in assessing liability, the relevant inquiry is whether
Plaintiff met all lawful requirements of the original Zoning
Ordinance and the applicable Adult Entertainment Ordinance at
the time of application and thereafter. (<u>See</u> Order of Dec.
27, 2007, at 10-11.)

In consideration of the original Zoning Ordinance,
Defendants concede that based upon the Eleventh Circuit's
holding that Plaintiff is grandfathered into the B-2 zone and
upon the admission that Plaintiff met all setback
requirements, Plaintiff complied with the original Zoning
Ordinance at the time of application. Moreover, Plaintiff
obtained a Business Tax Certificate for 2002 at the time of
application. Finally, the Adult Entertainment Ordinance in
place at the time of application was unconstitutional;
accordingly, Plaintiff did not need to comply with its
requirements. In short, Plaintiff should have been able to
open its doors on April 11, 2002.

However, Defendants' motion for partial summary judgment
looks beyond that point. Defendants point out that when

17

Plaintiff actually opened its doors on July 19, 2002, it did so illegally because it is located in a gateway corridor. Defendants therefore move for judgment as a matter of law with respect to all of Plaintiff's claims subsequent to July 18, 2002 - the date the Adult Entertainment Ordinance was amended to include the gateway corridor prohibition.

In response, Plaintiff contends that the Summer 2002 Amendments cannot be used to divest it of its property rights as a lawful nonconforming business. While the Court will address this argument below, it is important here to note that Plaintiff complains that other adult entertainment businesses in Richmond County operate within a gateway corridor area and thus are not in compliance with the Summer 2002 Amendments. Plaintiff seeks discovery that would tend to show that Defendants allow all other nonconforming businesses to operate with or without an adult licensing permit "and that Plaintiff has been treated in a discriminatory manner." (Pl.'s Renewed Mot. to Refuse Application for Summ. J., at 9.)

Plaintiff's protestations to the contrary, the Court concludes that Plaintiff seeks information relative to a disparate treatment, retaliation, or an equal protection claim. This case has involved the constitutionality of the adult entertainment zoning and licensing schemes, that is, whether the relevant ordinances are impermissible prior

18

restraints on speech. In the six year history of the case, there have not been allegations, arguments, or suppositions about the treatment of other adult entertainment businesses. Plaintiff did not seek discovery of this nature until August 2008. Plaintiff did not even seek this discovery in response to Defendants' February motion for partial summary judgment, in which they asserted the same grounds to which Plaintiff now claims its requested discovery is relevant. Plaintiff has not plead facts pertaining to or allegations of a disparate treatment, retaliation, or an equal protection claim in any of its amended complaints, nor did it seek to amend its pleadings when given the opportunity following the September 6, 2007 mandate.

On July 16, 2008, Plaintiff filed another lawsuit in this district that specifically asserts the types of claims upon which such evidence may be relevant. In <u>Augusta Video, Inc. v. Augusta, Ga.</u>, CV 108-099 (S.D. Ga. July 16, 2008) (J. Hall, presiding), Plaintiff seeks declaratory and injunctive relief under the First and Fourteenth Amendment. Of import here, Plaintiff makes the following claims:

> Defendants, through their application of the Augusta Adult Entertainment Ordinance, have knowingly and intentionally singled out Plaintiff for selective enforcement, unequal treatment and purposeful discrimination through the unequal, unjust and oppressive administration of the Adult Entertainment Ordinance. (CV 108-99, Compl. ¶ 105.)

19

The disparate treatment of the Plaintiff was
further motivated by Defendants' intent to
retaliate against the Plaintiff for successfully
pursuing its constitutional rights in Federal Court
. . . . (Id. ¶ 107.)

Defendants violated its right of Equal
Protection guaranteed by the Fourteenth Amendment .
. . by creating a disadvantaged "class of one" for
wholly arbitrary and capricious reasons and without
a rational basis for doing so. (Id. ¶ 110.)

Defendants . . . retaliat[ed] against
Plaintiff for the exercise of its First Amendment
rights of free speech and right to petition
government for the redress of grievances. (Id. ¶
111.)

In furtherance of these claims, Plaintiff alleges that other

adult entertainment businesses have been allowed to operate

without being in a conforming location and that their adult

entertainment permits have been granted as a matter of course.

(Id. ¶¶ 93-104.) These types of claims are simply not present

in the instant case, and the Court will not allow them to be

injected into the litigation at this late stage.

Further, evidence related to other adult entertainment

businesses is not relevant to Plaintiff's current challenges

to the zoning and licensing schemes. Here, the Court must

determine whether, leaving aside issues of disparate

treatment, the gateway corridor prohibition is applicable to

Plaintiff. Defendants' treatment of other adult entertainment

businesses will not change the assessment of the

constitutionality of the relevant ordinances as applied to

20

Plaintiff — at least not in the absence of the type of claim that Plaintiff now asserts in its latest federal suit. In short, this Court will determine whether Defendants are liable to Plaintiff without regard to their treatment of other businesses.

Upon the foregoing, this Court will not reopen discovery for the purpose of allowing Plaintiff to seek information pertaining to Defendants' treatment of other adult entertainment businesses. Accordingly, Plaintiff's motion for leave to engage in discovery (doc. no. 196) is **DENIED**. Plaintiff's motion to refuse the application for summary judgment (doc. no. 185) is also **DENIED**.

## B.    Defendants' Summary Judgment Motion

### 1.    Summary Judgment Standard

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all

21

justifiable inferences in [its] favor," <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). In this case, the determination of whether Plaintiff is a nonconforming use to which the Summer 2002 Amendments does not apply is a question of law. In other words, there is not a dispute of facts material to this determination.[10]

Defendants filed the instant motion for summary judgment on November 14, 2008. The Clerk gave Plaintiff the required notice of the motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 182.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Plaintiff filed a response to the motion for summary judgment addressing the merits of Defendants' motion on December 8, 2008. Defendants then filed a reply brief. The time for filing materials in opposition has expired, the matters raised in the motion have been fully briefed by both parties, and the motion is ripe for consideration.

---

[10] Plaintiff suggests that there are issues of material fact with respect to the setback requirements and Defendants' treatment of other businesses. However, the setback requirement issue has been resolved against Defendants, and this Court has ruled that disparate treatment evidence is immaterial.

22

2.   Legal Analysis

At the time Plaintiff sought to open its business, it required:

(1)   a special exception to the Zoning Ordinance;

(2)   a Business Tax Certificate; and

(3)   a licensing permit under the Adult Entertainment Ordinance.

Pursuant to the Eleventh Circuit's mandate of September 6, 2007, at the time Plaintiff applied for a special exception to the original Zoning Ordinance, the special exception requirement was invalid.   Moreover, because Plaintiff was located in a fully conforming site, namely the B-2 general business zone, and conformed to the original Zoning Ordinance in every way except for the special exception requirement, its use as an adult entertainment business is grandfathered into the B-2 zone. Moreover, having determined through Defendants' admission that Plaintiff met the setback requirements, the Court   concludes   that   Plaintiff   fully   satisfied   the requirements of the original Zoning Ordinance. Plaintiff also received a Business Tax Certificate at that time.   Finally, while Plaintiff had not applied for a licensing permit, it was not required to do so because the original Adult Entertainment Ordinance was unconstitutional. Upon the foregoing, and in viewing the facts most favorably to Plaintiff, Plaintiff

23

should have been able to open its doors for business on April 11, 2002.

According to Defendants, however, the enactment of the Summer 2002 Amendments changed the legal landscape. On July 18, 2002, the County Commission adopted Ordinance No. 6532, which struck the original Adult Entertainment Ordinance in its entirety and enacted a new Adult Entertainment Ordinance, which contained the gateway corridor prohibition. This prohibition was also contained in Ordinance No. 6540, an amended Adult Entertainment Ordinance adopted on August 6, 2002. Under Ordinance Nos. 6532 and 6540, an adult entertainment business required the following in order to operate:

   (1)   a   licensing   permit   under   the   amended   Adult
         Entertainment Ordinance; and

   (2)   a Business Tax Certificate.

Section 6-1-22 of Ordinance No. 6532 and Section 6-1-21 of Ordinance No. 6540 declared it unlawful for any adult entertainment establishment to be "operated, conducted or maintained contrary to the provisions of this Chapter."[11]

---

[11]     The gateway corridor prohibition appears in the current Adult Entertainment Ordinance, No. 6607, adopted on April 1, 2003.   Section 6-1-21 of Ordinance No. 6607 also provides: "Any adult entertainment establishment operated, conducted or maintained contrary to the provisions of this Chapter shall be and the same is hereby declared to be unlawful and a public nuisance."

24

Plaintiff opened its doors on July 19, 2002, but at that time, it had not received a valid licensing permit, nor could it have, because it was located in a gateway corridor area. Defendants therefore argue that even if Plaintiff had a right to open its doors on April 11, 2002, that right ended with the adoption of Ordinance No. 6532 on July 18, 2002. Thus, Defendants seek summary judgment for all Plaintiff's claims arising after July 18, 2002.

The issue now before the Court is whether Plaintiff has a vested right to operate an adult entertainment business without a licensing permit. In other words, does the gateway corridor prohibition, which precludes Plaintiff from obtaining a licensing permit, apply to Plaintiff or does its grandfather status preclude the application of the gateway corridor prohibition? I conclude that the gateway corridor prohibition, as adopted on July 18, 2002 and continuing in effect thereafter, is applicable to Plaintiff for the following reasons.

First, if this Court were to accept Plaintiff's contention that the Summer 2002 Amendments have no effect on its operation because of its grandfather status, it would render moot the Eleventh Circuit's mandate that Plaintiff must still comply with the current Adult Entertainment Ordinance.

AO 72A
(Rev. 8/82)

Second, the Eleventh Circuit held that Plaintiff's use as an adult entertainment business is grandfathered into the B-2 general business zone. In further explanation, the court stated that this means Plaintiff is exempt from proving that it lies within the LI or HI zones under a zoning ordinance and the current Adult Entertainment Ordinance. Then, in speaking to the applicability of the current Adult Entertainment Ordinance, the court stated that "the remaining requirements remain in full effect." One of the remaining requirements of the current Adult Entertainment Ordinances is the gateway corridor prohibition.[12]

Third, in support of its contention that it is vested in the use of the land as an adult entertainment business, Plaintiff cites to several cases for the proposition that a zoning law cannot divest a property owner of an acquired, vested right through retroactive application. Plaintiff seems to ignore the fact that the gateway corridor prohibition is in a licensing ordinance and not a zoning ordinance. Indeed, the Eleventh Circuit has already reversed this Court's conclusion

---

[12] Plaintiff contends that the statement by the Court of Appeals concerning the "remaining requirements" refers only to the setback requirements. The mandate contains no such limitation; instead, in discussing both the current zoning and adult entertainment ordinances, the court picks out the LI and HI zone requirement as inapplicable to Plaintiff but concludes that "the remaining requirements [of both current ordinances] remain in full effect."

26

that the amended Adult Entertainment Ordinance was a zoning ordinance subject to the Zoning Procedures Law of Georgia. See <u>Augusta Video, Inc. v. Augusta-Richmond County</u>, No. 03-10574, 87 Fed. Appx. 712 (Table) (11th Cir. Oct. 30, 2003) (citing <u>Artistic Entm't, Inc. v. City of Warner Robins</u>, 331 F.3d 1196 (11th Cir. 2003)). This distinction is important because the Georgia Supreme Court has stated: "While we have acknowledged the existence of 'constitutionally protected vested zoning rights' of a property owner, under certain conditions, so as to preclude retroactive application of a *zoning* ordinance, the same is not applicable to *licenses* to conduct business." <u>Goldrush II v. City of Marietta</u>, 267 Ga. 683, 698 (1997) (emphasis in original) (cited and quoted sources omitted). Because a property owner does not have a vested right in an annually renewed license, it cannot be said that Plaintiff has a vested right in an adult entertainment license.

Plaintiff's insistence that its vested right to locate the property in the B-2 general business zone without regard to the gateway corridor prohibition would have this Court classify the prohibition as a zoning requirement. In <u>Fairfax MK, Inc. v. City of Clarkston</u>, 274 Ga. 520 (2002), the Georgia Supreme Court defined "zoning ordinances" as those which "'regulate by classifying property into separate districts.'"

27

Id. at 521 (quoting <u>City of Lilburn v. Sanchez</u>, 268 Ga. 520, 521 (1997)). In the <u>Fairfax</u> case, the plaintiff's application for a building permit to construct a gas station was denied because it was too close to a day care center as prohibited in the city's Gasoline Service Station Ordinance ("GSSO"). The Georgia Supreme Court held that although the GSSO concerned the location of a gas station, it was not a zoning ordinance but rather a licensing ordinance. Id. In doing so, the court stated:

> The regulation of certain types of businesses due to their inherent character is not general and comprehensive like zoning. Instead, such regulation is special and limited in scope and governed by consideration of the circumstances, at the time of application, as to the particular business under consideration, the applicant, and even the location proposed. The presence of lot size requirements or space restrictions does not transform a local licensing or regulatory ordinance into one governed by a zoning procedures statute where it is clear from a reading of the ordinance "as a whole that it is intended to regulate a particular occupation, rather than to regulate the general uses of land." If a local ordinance applies to a particular activity wherever it is carried out in the town and does not suspend or limit the zoning ordinance, it "is not a zoning law merely because it touches the use of land."

Id. at 521-22 (cited and quoted sources omitted).

In the instant case, the Adult Entertainment Ordinances clearly regulate the character of the businesses - adult entertainment - and not the general use of land. Accordingly, the fact that the gateway corridor prohibition concerns the

AO 72A
(Rev. 8/82)

use of land does not make it a zoning ordinance.

In sum, the Eleventh Circuit has held that Plaintiff is now subject to the current Adult Entertainment Ordinance. In considering the time periods for which Plaintiff seeks damages, this Court necessarily looks to the then-current Adult Entertainment Ordinance to assess Defendants' liability. In doing so, the applicable Adult Entertainment Ordinance of July 19, 2002 and thereafter precludes the issuance of an adult entertainment license to a business located in a gateway corridor area. The gateway corridor prohibition is a valid *licensing* requirement[13] applicable to Plaintiff because the Eleventh Circuit mandated it to be so. Because Plaintiff could not have obtained a licensing permit, it was not entitled to operate its business after July 18, 2002.

### III.  CONCLUSION

Upon the foregoing, Defendants' motion for partial summary judgment (doc. no. 180) is **GRANTED**. Consequently, Plaintiff's claims for damages are limited to the time period between April 11, 2002 and July 18, 2002. Based on this ruling, the Court does not see the need of a protracted discovery period on the issue of damages although the Court

---

[13]  Of note, the Eleventh Circuit also upheld the current Adult Entertainment Ordinance, which includes the gateway corridor prohibition, as constitutional.

AO 72A
(Rev. 8/82)

recognizes that both parties have requested discovery as it pertains to the calculation of damages. Having now narrowly defined the remaining issue before the Court, the parties are invited to submit a proposed scheduling order for the remainder of the case within fifteen (15) days hereof. Accordingly, Defendants' motion for discovery (doc. no. 141), filed on January 18, 2008, and Plaintiff's motion for a scheduling order and trial (doc. no. 186) are **DENIED AS MOOT.** The Court will address discovery matters and the trial of the case following the parties' submissions.

    **ORDERED ENTERED** at Augusta, Georgia, this _24th_ day of March, 2009.

UNITED STATES DISTRICT JUDGE

AO 72A
(Rev. 8/82)